Meeker *v.* Harris.

## MEEKER *et al. v.* HARRIS *et al.*

WHERE a judgment by confession is attacked by a creditor as fraudulent against him, on the ground that the object of the debtor and the judgment creditor was to assist the debtor in forcing a compromise with his other creditors rather than to enforce the judgment, the complaint must plead *this ground* of objection to the judgment. A general averment that the intent was to hinder, delay and defraud is insufficient.

Such general averment of fraud will not put the adverse party on his defense.

*Macy* v. *Kinder* (7 Cal. 206) and *Harris* v. *Taylor*, (15 Cal. 384) as to averments of fraud, affirmed.

Meeker *v.* Harris.

An insolvent debtor, wishing to prefer a particular creditor, may give him a confession of judgment, with the agreement between them that judgment shall not be entered on the confession, if the debtor succeeds in obtaining from his other creditors an extension—the creditor himself in that event also to give time; but that if the other creditors refuse such extension and attempt to attach, then that the judgment may be entered on the confession and execution issued. Such a confession, not used nor intended to be used to influence the negotiations with the other creditors, but simply designed to secure the preferred creditor, and at the same time to extend as much leniency to the debtor as is consistent with the creditor's own security, is valid.

In this case—a creditor's bill to set aside certain judgments—the Supreme Court reversed the judgment below as to two defendants, and reviewed the evidence so far as to render judgment in their favor.

APPEAL from the Sixth District.

Bill to set aside certain judgments by confession in favor of Davis, Galland and Goldman and against Harris & Morris, on the ground of fraud as against plaintiffs and other creditors.

The allegations of the complaint, as to the fraudulent character of the judgments in favor of Davis, Galland and Goldman, are: "And for a further cause of action, plaintiffs say, that they are informed and believe, and so charge the truth to be, that said Harris & Morris were not indebted to said Davis, Galland and Goldman at the time the said judgments were confessed, and if indebted at all, only to a very small amount, not exceeding in all the sum of $1,000, and that said Harris & Morris did not borrow from said Davis, Galland and Goldman the several large amounts alleged to have been borrowed from them; that the notes mentioned in said confessions of judgment were given and the said judgments were confessed for the purpose of hindering, delaying and defrauding the plaintiffs and other *bona fide* creditors of said Harris & Morris. The plaintiffs say that at the time of the sale of said liquors, etc., by the plaintiffs to said Harris & Morris, the said Harris informed plaintiffs that said firm were not indebted to any person in the city of Sacramento, and that said statement was made to plaintiffs since the dates of the notes alleged to have been given to said Davis, Galland and Goldman; and that the plaintiff says that they are informed and believe that said Davis, Galland and Goldman have combined and confederated with said Harris & Morris to injure and defraud plaintiffs and the other creditors of said firm, and to that end and purpose the said judgments were confessed."

The answers denied all charges of fraud.

In the month of April, 1861, the defendants, Harris & Morris, liquor dealers and saloon keepers in Sacramento, being in embarrassed circumstances and unable to pay their debts without an extension of time, resorted to their attorneys, Winans & Hyer, for advice regarding their business matters. Having made an ineffectual attempt to settle with a San Francisco creditor, (Turner & Co.) and anticipating that creditor would take proceedings against them, which would destroy their business, and being desirous therefore to give certain confidential creditors, namely : defendants Galland, Goldman & Davis, " who were urging a payment of their claims," a preference, they, on or about the first day of May, consulted their said attorneys in reference thereto. The mode of accomplishing the object suggested by their attorneys, was to confess judgment in favor of Galland, Goldman & Davis for their respective debts. Harris & Morris consented to make such confession, on condition that Harris & Morris should prepare confessions of judgment and leave them in the hands of their attorneys, without the entry of judgment thereon, until they could make an effort to procure an extension from their other creditors, who were in San Francisco. If Harris & Morris could get the extension, then Galland, Goldman & Davis were not authorized to obtain the confession from Winans & Hyer and enter judgment thereon, but on the contrary, agreed to give an equal extension on their debts. But if Harris & Morris were unable to procure an extension from their other creditors, and could not therefore go on with their business, then Galland, Goldman & Davis were authorized to procure the confessions from Winans & Hyer, enter judgment thereon, issue execution, etc.

On the first of May, 1860, confessions of judgment were made to the said parties, subject to the conditions referred to, and left with Winans & Hyer. Morris then went to San Francisco to procure, if possible, an extension from the other creditors. In this he failed, and Mr. Hyer, having learned from the circumstance of the levy of a San Francisco attachment on the property of Harris & Morris, that the negotiations of Morris had been unsuccessful, and the condition upon which the judgments were to be entered had

Meeker *v.* Harris.

occurred, thereupon, at the instance of Galland, Goldman & Davis, on the morning of May 3d, entered judgments in their favor upon the confessions; executions were issued and levied on the liquors, etc., in the saloon of defendants.

Subsequently, on the same day, Harris & Morris confessed a judgment to plaintiffs, who levied execution upon the same property.

When the executions of Galland, Goldman & Davis were levied, there was a convention in the building where the saloon was, and the proceeds of the bar were great. Galland, Goldman & Davis served upon the Sheriff, after having advised with Mr. Hyer whether they could properly do so, and been informed that in his judgment they could, the following notice:

" DISTRICT COURT,          State of California,
" City and County of Sacramento.    Sixth Judicial District.

J. DAVIS,          M. GOLDMAN,          A. GALLAND,
    vs.               vs.                   vs.
J. HARRIS *et al.*    J. HARRIS *et al.*    J. HARRIS *et al.*

" SYLVESTER MARSHALL, *Sheriff of Sacramento:*

" You are hereby requested to levy upon all the property contained in and about the Railroad Exchange belonging to defendants, and hold the same for the satisfaction of the executions issued in above confessions of judgment, but inasmuch as defendants represent unto us that there is a prospect of a settlement being speedily made with their creditors, you are hereby authorized to allow the business of the bar to continue without closing the house until further notice from us, or either of us, and for that purpose we consent that you appoint the present bar keepers as your bailiffs, holding balance of said property yourself.

" J. DAVIS,
" M. GOLDMAN,
" A. GALLAND, by his Att'y.
" M. GOLDMAN.

" SACRAMENTO, May 3d, 1860."

The Sheriff, however, did not act upon these instructions, but closed the house. Mr. Hyer states the object of serving this notice was to increase the assets, and further says: " I was willing

19

the Sheriff should receive the receipts of the bar, as we supposed that outside of the bar the Sheriff had enough attached to meet the attachments and executions already levied," namely : the San Francisco attachment, and the three executions of Galland, Goldman and Davis.   The proceeds of the property, when sold, were only sufficient to pay these three executions.

Upon the trial, certain special issues were submitted to a jury : 1st, whether the debts for which judgment had been confessed in favor of Davis, Galland and Goldman were *bona fide* or simulated ; and 2d, whether the judgments were confessed to be used and collected in any event, or only to be used in the event Meeker & Co. sought to collect their debt.

Upon these issues the jury answered ; 1st, that the Davis debt was without consideration, and that nothing was due to him by Harris & Co. ; 2d, that they could not agree as to whether the Goldman debt was simulated or not ; 3d, they found that the Galland debt was *bona fide ;* and 4th, that at the time the judgments were confessed to these parties, there was no intention to use them, except in the event that Meeker & Co. and other San Francisco creditors should refuse to extend the time, and attempt to collect their debts.   Judgment was reserved, and subsequently plaintiffs moved for judgment, *non obstante veredicto,* against Galland and Goldman. The Court filed a written opinion, maintaining, in substance, that the agreement between Galland and Goldman and Harris and Morris, that the former should not use the confessions of judgment made in their favor by the latter, except in the event that Meeker & Co. and other San Francisco creditors should refuse an extension of time, and attempt to collect their debts, etc., amounted in law to fraudulent use of a judgment ; that the purpose was to hinder other creditors in the collection of their debts within section twenty of our Statute of Frauds (Wood's Dig. 107).   The Court therefore directed plaintiffs' counsel to draw findings accordingly, and a decree in favor of plaintiffs as prayed for.

Subsequently, plaintiffs' counsel presented findings embracing the facts before stated, adopting the special verdict, except as to Goldman's debt, upon which the jury failed to agree ; and, as to this, finding it to be just and due, and finding as conclusion of law

that plaintiffs were entitled to have their judgment satisfied out of the funds in the Sheriff's hands before Davis, Galland and Goldman.

To these findings defendants excepted, on the grounds that the Court had no power to make them, because, the case having been submitted to a jury, their verdict was conclusive, and left the Court nothing but to draw conclusions of law. Overruled, and findings signed by the Judge, and judgment accordingly for plaintiffs as asked.

Motion for new trial overruled. Neither on the introduction of evidence on the trial, nor on the motions for nonsuit or new trial, was there any objection taken by defendants to the complaint as not sufficiently pleading the alleged fraud by Davis, Galland and Goldman, and Harris & Morris. Defendants' appeal.

*Winans,* for Appellants.

I. The jury having found that the debt due from Harris & Morris to Galland was *bona fide,* the Court erred in deciding that the confession to him was void as against the subsequent confession to plaintiffs. (*Gamble* v. *Voll,* 15 Cal. 510.)

II. The confession of judgment from Harris & Morris to Galland was *bona fide,* and equally exempt from fraud in fact or fraud in law. It was not designed to hinder or delay the claims of other creditors within the meaning of the statute or otherwise, and must therefore stand. (*Jones* v. *Nautright,* 2 Stockton, Ch. 303 ; *Bernis* v. *Dunham,* 1 Spier S. C. 42 ; *Hollister* v. *Loud,* 2 Mich. (Gibbs) 310 ; *Ingraham* v. *Grigg,* 13 Sm. & M. 31 ; *Douglas* v. *Bank of Virginia,* 11 Id. 460 ; *Hartshorn* v. *Eames,* 31 Me. 93 ; *Covanhovan* v. *Hart,* 21 Penn. 495; *People* v. *Cook,* 4 Seld, 79 ; *Cassin* v. *Murray,* 15 Mo. 378 ; *Kuzkendall* v. *McDonald,* 15 Id. 416 ; *Meux* v. *Howell,* 4 East, 1 ; *Wilder* v. *Winne,* 6 Cow. 284; *Nicholson* v. *Leavitt,* 4 Sandf. Sup. Ct. 253, 284–5 ; *Pistock* v. *Lyster,* 3 Maule & Selw. 371 ; *Braddock* v. *Watson,* 9 Price, 6.)

III. The fact that the affidavit was made for judgment in favor of defendant Galland on the contingency, and subject to the principle of enforcement set forth in the evidence, did not invalidate it. It was competent for Harris & Morris to give defendant the affidavit of confession (which is equivalent to the ancient warrant of attorney).

and make the entry of judgment thereupon dependent upon a contingency of circumstances or time. (*Keep* v. *Licky*, 8 Richardson, 169; *McClish* v. *Manning*, 3 Green, (Iowa) 223; *Gilmer* v. *Earnhardt*, 1 Jones, N. C. 559; *Cochran* v. *Paris*, 11 Gratt. 348; *Mackie* v. *Cairns*, 1 Hopk. Ch. 373.)

IV.  Even where the fraudulent intent does exist, it must be participated in by both parties or the judgment will be upheld. (*Magniac* v. *Thompson*, 1 Baldwin, 357; *Vischer* v. *Webster*, 8 Cal. 112; *Hempstead* v. *Johnson*, 18 Ark. 124; *Borland* v. *Mayo*, 8 Ala. 106; *Shutow* v. *Sherman*, 11 Mo. 389; *Little* v. *Eddy*, 14 Id. 160; *Brown* v. *Foree*, 7 B. Mon. 359; *Brown* v. *Smith*, Id. 362; *Stephens* v. *Hinckley*, 43 Me. 414; *Walcott* v. *Brender*, 10 Texas, 424.)

V.  In the establishment of a fraudulent intent under the statute to effect the transfer of property, the clearest proof is required, and the *onus probandi* rests on the party who avers the fraud.  In other words, the law throws the burthen of proof of the fraudulént intent upon the plaintiff, and requires that that proof should be clear and strong.  (*Dunham* v. *Gates*, 3 Barb. Ch. 196; *Hempstead* v. *Johnson*, 18 Ark. 124; *Clark* v. *Bailey*, 2 Strobh. Eq. 143: *Nichols* v. *Patten*, 6 Shepley, 232; *Grover* v. *Wakeman*, 11 Wend. 192; *Duval* v. *Coale*, 1 Md. Ch. 168; *Vernon* v. *Morton*, 8 Dana, 247; *Brown* v. *Bartel*, 10 Sm. & M. 268; *Henry* v. *Henry*, 8 Barb. 588, 2 Mich. (Gibbs) 310; *Joice* v. *Joice*, 5 Cal. 161; *Bogart* v. *Haight*, 9 Paige, 297.)

VI.  The jury, as a question of fact, found defendant Galland's debt to be *bona fide*, and rendered a verdict for him.  The Court, however, subsequently determined, as appears from its equivocal opinion, that a fraud in law existed, and rendered judgment against him " *non obstante veredicto*."  But whether the Court meant to determine that the fraud it found against Galland was a fraud in fact or a fraud in law, in either case under the statute such fraud was a question for the jury, not the Judge, and the Court erred in taking it from them and rendering a finding of the Court thereupon. (Statute of Frauds, secs. 20, 23, Wood's Dig. 107; *Seward* v. *Jackson*, 8 Cow. 406; *Jackson* v. *Zimmerman*, 7 Wend. 436; *Cunningham* v. *Freeborn*, 3 Paige, 557; *Goodrich* v. *Downs*, 6

Meeker *v.* Harris.

Hill, 438; *Smith* v. *Neal,* 1 Hawk's L. & E. 342; *Pearson* v. *Manning,* 2 Mich. 455; 1 Baldw. 356; *Ewing* v. *Cargill,* 13 Sm. & M. 84; *Marden* v. *Babcock,* 2 Met. 105; *Jackson* v. *Peck,* 4 Wend. 303; *Hines' Lessee* v. *Longworth,* 11 Whea. 213; *Brown* v. *Foree,* 7 B. Mon. 358; Id. 362; *Patrick* v. *Montader,* 13 Cal. 443; *Cadogan* v. *Kennet,* Cowp. 435.)

VII. The complaint does not aver a legal or constructive fraud in the confession of judgment to Galland, but a fraud in fact, viz: that Harris and Morris were not indebted to him in the sum confessed, and that the confession was for a simulated debt.  The jury having found that Galland's debt was not fraudulent, but *bona fide,* it was error in the Court to render judgment against him under the complaint, and the issue of fraud tendered thereby.  (*Harris* v. *Taylor,* 15 Cal. 349; *Maine* v. *Bailey,* 15 Conn. 298; *Graff* v. *Graff,* 14 Serg. & R. 181; *Giles* v. *Williams,* 3 Ala. 316; *Hynson* v. *Dunn,* 5 Pike, 395: *Clay* v. *Dennis,* 3 Ala. 375; *Gamble* v. *Voll,* 15 Cal. 510.)

VIII.  The finding of the Court as to Galland is not sustained by the finding of the jury.  The former usurps the functions of the jury in finding that the intention of Galland was: 1st, to be in a position to secure his own debt; 2d, to aid Harris and Morris by extending time to them; while the latter altogether omits to pass upon the question of intention, thus directly reversing the rule of law in this behalf.  Nor is there any evidence whatever to support the inference of fraudulent intention found by the Court.  (*Rockenbaugh* v. *Hubbell,* 15 Barb. 563, cited in note.)

IX.  The Court erred in signing, filing and rendering a series of findings of fact in this cause, with its conclusions therefrom, after the case had been submitted to a jury by its own order, and a special verdict rendered by them thereupon.  It was the duty of the Court to draw its conclusions of law from the conclusions of fact found by the jury, and not from conclusions of fact found by itself. (Prac. Act, sec. 174.)

X.  The Court erred in rendering judgment *non obstante veredicto* in favor of plaintiffs, and against defendant Galland.  (*People* v. *Haddock,* 12 Wend. 475; 2 Archb's Prac. 261.)

*Frank Hereford,* also for Appellants, Goldman and Davis.

*J. H. Gass* and *R. C. Clark*, for Respondents.

I.   Appellants' first point is, that " the jury having found that the debt due from Harris & Co. to Galland was *bona fide*, the Court erred in deciding that the confession to Galland was void, etc."

Two issues are presented in the complaint : 1st, that the debt of Galland was fraudulent; and 2d, that the judgment was confessed for the purpose of hindering and delaying Meeker & Co. in the collection of their debt.

Section twenty of our Statute of Frauds provides, that every decree or judgment suffered with intent to hinder and delay creditors of their lawful suits, damages, debts, or demands, as against such person so hindered or delayed, shall be void.   This implies that, although the debt may be *bona fide*, if the judgment was confessed with intent to hinder or delay creditors in the collection of their demands, the judgment as to such creditors is void.

" If one purchases property from another, either real or personal, for its full value, and pays the price in money, it is still a fraudulent transaction, provided the purchaser did it with the intent to aid the seller in defrauding his creditors."   (Parsons' Mer. Law, 283.)

The debt, then, may be *bona fide*, and as between parties to it there may be no objection as to the object and purposes of the judgment, or the manner in which it is to be used ; yet the objects and intentions of the parties in pursuing their legal rights may render the judgment void as to third persons.   A party may, as in this case, obtain judgment for a *bona fide* debt, (that is, by confession) and he may have a perfect right to collect it ; but if his primary object is not to collect his debt, but to prevent or embarrass some one else in the collection of theirs, then his judgment *quoad hoc*, that is, as to the person prevented or embarrassed, is void.   The *bona fides* of the judgment then depends upon the intent with which the judgment was confessed by Harris & Co., and received by Galland.   (Parsons, *supra ; Bunn* v. *Ahl*, 29 Penn. 387 ; *Jones* v. *Nautright*, 2 Stockton's Ch. 303.)

A judgment may be confessed to be entered at a subsequent day, or upon the happening of a particular contingency, in the absence of collusion and fraud, we admit ; but that a judgment is good con-

fessed to be entered if another creditor shall attempt to assert his rights against the common debtor, or be abandoned if he does not, we doubt; at all events, admitting that the action in itself is not *prima facie* fraudulent, we say that it is a fact, taken in connection with other facts and the attending circumstances, from which fraud may be inferred.   And this is sufficient in this case.   Our position is, that the intention not to use the confessions of judgment in the event that Meeker & Co. would not proceed against Harris & Co. was a fact, and a very weighty fact, taken with others, from which the jury and Court might infer that those judgments were intended to hinder and delay Meeker & Co. in collecting their debt. The question, therefore, of intent, enters to give validity, or render void, the judgments, and this is the tenor of the authorities.   This covers appellants' second and third points.

II.   Appellants' fourth proposition we admit to be correct.   If Galland and Goldman were innocent of the admitted fraud of Harris & Co., they ought not to be affected by it.   But the Court in its findings says that they did participate in the fraud; that they did aid Harris & Co. in concocting, procuring and using the judgments confessed for fraudulent purposes; that their object was not to take judgments so as to collect their own debts in good faith, but to prevent Meeker & Co. collecting theirs.

III.   The Court in an equity suit may send the case to a jury without the consent of the parties, and adopt or reject the findings, as the Court may deem proper.   (*Still* v. *Saunders*, 8 Cal. 186 ; *Smith* v. *Rowe*, 4 Id. 6 ; *Domingues* v. *Domingues*, 7 Id. 426 ; *Good* v. *Smith and wife*, 13 Id. 81 ; *Gray* v. *Eaton*, 5 Id. 48.)

It was a matter of discretion, then, with the Court to send the case to a jury or not, or to adopt or reject the findings of the jury in whole or in part.

Counsel argues that the Court had assumed the fraud as a presumption of law.   The fraud was treated, or rather tried, as a question of fact, and from the facts the fraud was deduced.   We charged that the judgments were confessed to hinder and delay Meeker & Co. in the collection of their debt.   The Court says, that all the facts and circumstances of the case show that the judgments were confessed for fraudulent purposes with a fraudulent intent.   This, then, was determining the point as a question of fact.

Counsel says, that the judgment is based upon two considerations : " 1st, Galland's agreement that he would not enter judgment if the other creditors would extend ; and 2d, Galland's notice to the Sheriff not to hold under strict execution, exempt from use, more property than was sufficient to protect the execution." These considerations, as he terms them, were facts which, taken in connection with other facts, authorized the finding and judgment. The proof shows a combination between Galland and other parties, having a common purpose in view. Their acts in carrying out that common purpose were as much his acts as if performed by himself ; and if these acts indicated the intention to commit a fraud, then Galland was guilty of that fraud.

IV. Appellants' seventh point is, that " the complaint does not aver a legal or constructive fraud in the confession of judgment to Galland, but a fraud in fact, namely : that Harris and Morris were not indebted to him in the sum confessed ; that the confession was for a simulated debt," etc.

In the first place, if the objection was ever good, it comes at this time too late ; it should have been raised in the Court below. Reference to the motion for nonsuit, and to the motion for new trial, will show that this was not done. No objection was raised to the introduction of proof on that ground. Had such objections been made, the complaint could have been amended. The findings of the Court and jury cured all objections to the complaint—if it was amenable to any—on the ground of its generality. And this is consistent with the rule, or rather principle, of *Gamble* v. *Voll*, (15 Cal). In that case, the fraud charged was ignored by the findings ; in this case, the general charge of fraud is aided or cured by the special finding.

The verdict *non obstante veredicto* was correct. The finding of the Court that the judgment was confessed for fraudulent purposes, and with a fraudulent intent, was a finding upon the merits of the case, and the jury having found the debt of Galland *bona fide*, made the judgment technically correct, nor was the case so cloudy but the Court could see plainly the fraud contemplated by the appellants.

Out of the points of error insisted upon by appellants, not one exhibits such error as would authorize this Court to interfere.

Meeker *v.* Harris.

The whole evidence goes to show a design on the part of Harris and Morris to defraud Meeker & Co., and that the judgments were confessed as the best means of effecting that purpose. The findings are to this effect, and where there is any evidence to sustain the findings, the Court will not set them aside. (13 Cal. 40; 5 Id. 90; *Lyons* v. *Lyons*, 18 Id. 447; *Baxter* v. *McKinley*, 16 Id. 76.)

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This is an action to set aside certain judgments confessed by two of the defendants, Harris and Morris, in favor of the defendants Davis, Galland and Goldman, respectively. It is alleged that there was no consideration for these judgments, and that they were confessed for the purpose of hindering, delaying and defrauding the plaintiffs and other creditors of Harris and Morris. The complaint contains the additional allegations of insolvency, etc., necessary to entitle the plaintiffs to recover, and upon the evidence adduced at the trial, the Court below granted the relief asked. The appeal brings the entire case before us for review, and upon examination of the record, we are satisfied that so far as Galland and Goldman are concerned the judgment should be reversed. It appears that Harris and Morris were justly indebted to them in the amounts covered by the confessions in their favor, and the alleged want of consideration is expressly negatived by the findings. This is a complete answer to everything charged against them in the complaint, and the conclusion that the object was to assist Harris and Morris in forcing a compromise with other creditors, is wholly immaterial. In order to render the objection on this ground available, it was necessary to plead it, and it is not sufficient that an intent to hinder, delay and defraud is averred in general terms. This averment amounts to little more than a declaration that the parties rely upon the statute, and the complaint would have been as perfect without it as it is with it. Even regarding it as the statement of a fact, it is too general and indefinite for any effect to be given to it as a pleading; and we do not propose to depart from the rule laid down in *Macey* v. *Kinder*, (7 Cal. 206) and in *Harris* v. *Taylor* (15 Cal. 384).

Meeker *v.* Harris.

If such an averment were held to be sufficient to put the adverse party upon his defense, it is evident that the pleadings in this class of cases would soon cease to be of any practical value. Indeed, it would be as well to dispense with them entirely, for a more effectual mode of getting into Court without disclosing the substantial grounds of the action could not be provided.

The result is, that as to Galland and Goldman, the judgment must be reversed, and in view of the evidence in the case, we are of opinion that a judgment should be entered in their favor. Their debts were honestly due, and we see nothing in the circumstances from which it can be inferred that their object was to assist Harris and Morris in obtaining an undue advantage of other creditors. They desired to place themselves in a position to secure the payment of their demands, and all that appears beyond this is, that they were willing to extend to Harris and Morris whatever leniency they could consistently with their own security. It does not appear that the confessions given to them were to be used to influence negotiations with other creditors; and aside from the fraudulent motive imputed to them, it is not pretended that there was any illegality in the course pursued. They did what the law entitled them to do, and it would be an act of gross injustice to deprive them of the fruits of their diligence upon a bare suspicion that they intended something wrong. There is not a tangible circumstance in the case irreconcilable with the presumption of good faith and fair dealing on their part.

In respect to Davis, the Court finds a want of consideration in accordance with the allegation of the complaint, and there is no doubt of the sufficiency of the evidence to support this finding.

The judgment is reversed as to Galland and Goldman, and the cause remanded with instructions to the Court below to enter a judgment in their favor for costs. In other respects the judgment is affirmed.

On petition for rehearing, the opinion of the Court was delivered by COPE, J.—FIELD, C. J. concurring.

The petition for a rehearing in this case must be denied. We ordered a judgment in favor of Galland and Goldman, for the reason

that the evidence was wholly insufficient to warrant the conclusion which had been arrived at by the Court below. We proceeded in this respect independently of the objections to the complaint, and we still entertain the same opinion of the merits of the controversy. There is nothing in any of the points suggested.

Petition denied.